UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JACKLYN M. DONAHUE,

                              Plaintiff,        **No. 6:17-cv-06838(MAT)**
                                                **DECISION AND ORDER**

              -vs-

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                              Defendant.
_____

## I.   Introduction

Jacklyn M. Donahue ("Plaintiff"), represented by counsel,
brings this action pursuant to Titles II and XVI of the Social
Security Act ("the Act"), seeking review of the final decision of
Carolyn W. Colvin, Acting Commissioner of Social Security ("the
Commissioner"),[1] denying her applications for Disability Insurance
Benefits ("DIB") and Supplemental Security Income ("SSI"). The
Court has jurisdiction over the matter pursuant to 42 U.S.C.
§§ 405(g), 1383(c).

## II.  Procedural Status

Plaintiff applied for DIB and SSI on April 12, 2013, alleging
disability beginning January 2, 2013. Her applications were denied
initially on June 19, 2013, and she requested a hearing. On
April 8, 2015, Plaintiff appeared with counsel, and testified at a

_____

[1]

Carolyn W. Colvin resigned as Acting Commissioner in January of 2017, and
her successor, Nancy A. Berryhill, is no longer serving in that position. The
Clerk of Court therefore is directed to substitute "The Commissioner of Social
Security" for Carolyn W. Colvin as the defendant in this action. See 20 C.F.R.
§ 422.210(d).

hearing held by Administrative Law Judge Michael W. Devlin ("the ALJ"). The ALJ considered Plaintiff's claims de novo and issued an unfavorable decision on June 29, 2015. (T.8-24).[2]

Applying the five-step sequential evaluation, 20 C.F.R. §§ 404.1520, 416.920, the ALJ found that Plaintiff At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between August 6, 2013, her amended alleged onset date, and June 29, 2015, the date of the ALJ's decision (T.13). At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease with lumbar radiculopathy; cervical spondylosis, status-post cervical surgery; left-sided ulnar neuropathy and cubital tunnel syndrome; left carpal tunnel syndrome; bilateral varicose veins; right foot neuroma; and obesity. (T.13-16). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any listed impairment, in particular, Listing 1.02 (major dysfunction of a joint) or Listing 1.04 (disorders of the spine). (T.16). The ALJ then assessed Plaintiff as having the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except she can occasionally lift and/or carry up to 10 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk up to two hours in an eight hour

---

[2]    Citations in parentheses to "T." refer to pages in the certified administrative transcript.

workday, sit about six hours in an eight hour workday, occasionally push and/or pull 10 pounds; occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders ropes scaffolds, occasionally reach, handle, and finger with the non-dominant left upper extremity; and frequently look up and look down and turn the head to the left and to the right. (T.16-18). At step four, the ALJ found that Plaintiff could not perform any of her past relevant work as Manager of Department Store, Manager of Restaurant, and Manager of Retail Store which were skilled with a specific vocational preparation ("SVP") code of 7 and required the following skills: data, coordinating, analyzing, compiling, computing, copying and comparing, people skills, supervising, persuading, speaking, signaling, serving, taking instruction, and diverting. (T.18). At step five, the ALJ relied on the VE's testimony to find that there were jobs that exist in the national economy that Plaintiff can perform, given her age, RFC, and vocational background. Therefore, the ALJ found that Plaintiff had not been under a disability as defined in the Act. (T.20).

On November 7, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely commenced this action.

## III. Scope of Review

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual

findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g) (stating the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citation omitted).

## IV. Discussion

### A. Error in Weighing Opinions from Acceptable Medical Sources and Other Sources (Plaintiff's Point I)

Plaintiff contends that the ALJ erred in weighing the opinions offered by examining and non-examining "acceptable medical sources" and by treating "other sources."

#### 1. Independent Medical Examiners

First, Plaintiff argues that the ALJ improperly discounted the assessments made by independent medical examiners Drs. Seth Zeidman and Roger Ng. On February 11, 2013, in a letter to the Workers' Compensation Board ("WCB"), Dr. Zeidman indicated that Plaintiff was 100 percent temporarily impaired. (T.309). The letter indicated

-4-

that while surgery was recommended, it could not be performed due to Plaintiff's failure to cease smoking. On March 7, 2013, in a letter to the WCB, Dr. Ng indicated that Plaintiff was 100 percent temporarily impaired. (T.303-04). Dr. Ng summarized Plaintiff's recent treatment, which included epidural injection therapy.

On August 6, 2013, Dr. Zeidman performed a series of surgical procedures to address Plaintiff's neck pain and numbness. (T.414-15). Post-surgery, Dr. Zeidman confirmed to the WCB that Plaintiff was 100 percent temporarily impaired. (T.445-63).

On November 18, 2014, in a letter to the WCB, Dr. Ng assessed Plaintiff as being 100 percent temporarily impaired for Workers' Compensation purposes. (T.523-28). Plaintiff reported that her neck pain had stabilized with use of a TENS unit, although she was increasingly bothered by cold weather. (T.523). On examination, Plaintiff displayed normal muscle tone throughout her arms and legs, full strength in her lower extremities, and near-full strength in her upper extremities. (T.524).

On December 3, 2014, in a letter to the WCB, Dr. Ng indicated that Plaintiff was 100 percent temporarily impaired for Workers' Compensation purposes. (T.519-22). The letter summarized Plaintiff's recent treatment, which included epidural injection therapy.

On February 3, 2015, in a letter to the WCB, Dr. Ng assessed Plaintiff as being 100 percent temporarily impaired for Workers'

Compensation purposes. (T.513-18). Plaintiff reported improvement following the December 2014 epidural injection, and stated that the TENS unit remained "very useful for her" in stabilizing her neck pain. (T.513). On examination, Plaintiff displayed normal muscle tone throughout her arms and legs, full strength in her lower extremities, and near-full strength in her upper extremities. (T.514).

As an initial matter, the Court must address the accuracy of Plaintiff's characterization of Dr. Zeidman and Dr. Ng's opinions. According to Plaintiff, these physicians opined that she was "100% disabled." (Pl.'s Br. at 4-6, 11). This is an inaccurate recitation of the record. In fact, as the Commissioner points out, both physicians assessed Plaintiff's degree of temporary impairment in the Workers' Compensation context,[3] not her level of "disability."

Turning to the ALJ's decision, the ALJ afforded little weight to by Dr. Zeidman's and Dr. Ng's assessments. (T.18). The ALJ explained that he decided to discount these opinions because they were conclusory. As he correctly observed, Dr. Zeidman and Dr. Ng This is a correct characterization of  and were contradicted by the objective evidence in the record as well as Plaintiff's self-reported activities. See Fagner v. Berryhill, No. 14-cv-6569, 2017 WL 2334889, at *8 (W.D.N.Y. May 30, 2017) (ALJ need not give

---

[3] On August 15, 2010, Plaintiff was injured while attempting to move a broken refrigerator unit at work. (T.318, 326). That injury led to her receipt of Workers' Compensation benefits from the State of New York. (T.31-32).

controlling weight even to the opinion of a treating physician, when that opinion is unsupported by objective medical evidence and based on claimant's subjective reports) (citation omitted)); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). This finding was supported by substantial evidence.

Most importantly, the ALJ correctly noted that Drs. Zeidman and Ng evaluated Plaintiff's impairment in light of the Workers' Compensation standards; the SSA's disability process is different from the process for determining entitlement to Workers' Compensation benefits, and it employs significantly different standards. (T.18). As the Commissioner argues, the applicable regulations and Second Circuit precedent establish that an ALJ is not bound by the disability findings of any other agency. See 20 C.F.R. §§ 404.1504, 416.904; Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013 Feb. 21, 2013) (unpublished opn.) (citing 20 C.F.R. § 404.1504)); Lohnas v. Astrue, 510 F. App'x 13 (2d Cir. 2013) (unpublished opn.). Title 20 C.F.R., Sections 404.1504 and 416.904 provide as follows:

> A decision by any nongovernmental agency or any other governmental agency about whether [claimants] are disabled or blind is based on its rules and is not [the Commissioner's] decision about whether [claimants] are disabled or blind. [The Commissioner] must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that [claimants] are disabled or blind is not binding on [the Commissioner].

20 C.F.R. §§ 404.1504, 416.904. Thus, the degree to which Plaintiff's impairment may have met the WCB standard does not dictate whether she retained the capacity to perform substantial gainful activity in a matter governed by the Act. See, e.g., Lohnas, 510 F. App'x 13 ("Because the Commissioner is not bound by another agency's disability determination, and because the Commissioner's decision was supported by substantial evidence, any alleged failure by the ALJ to consider fully the disability determination by the Department of Veterans Affairs does not affect our decision to affirm.").

### 2. Treating Source Opinions

Plaintiff contends that the ALJ was required "to give controlling weight to all of [her] treating physicians' opinions." (Pl.'s Br. at 15). The Commissioner argues that this standard is both unsupported by the case law and essentially impossible when more than one single treating source offers a medical source statement or opinion.

First, although Dr. Zeidman and Dr. Ng were acceptable medical sources with first-hand knowledge of Plaintiff's impairments and limitations, they evaluated her condition only with respect to her eligibility for Workers' Compensation benefits, not as to whether she retained the capacity to perform substantial gainful activity as defined by the Act. (T.18). Therefore, as discussed supra, in Section A.1, the ALJ did not err in declining to afford controlling

or even significant weight to their opinions. Furthermore, the ALJ noted, Drs. Zeidman and Ng's clinical observations "fail to support an inability perform work at a sedentary level." (T.18). For instance, on examination, Plaintiff's upper and lower extremities were normal to inspection and palpitation with no tenderness bilaterally; she had normal strength and muscle tone; and she had full gentle range of motion of the lower extremities. (T.18 (citations omitted)). In sum, the ALJ did not err in assigning "little weight" to Drs. Zeidman and Ng's assertions, in connection with the Plaintiff's Worker's Compensation claim, that she was temporarily, totally impaired.

Second, Plaintiff's treating social worker, Rebecca Thomas ("Social Worker Thomas") is not an acceptable medical source as defined in the regulations and, as such, cannot establish whether a claimant has a medically determinable impairment. 20 C.F.R. §§ 404.1513, 416.913; see also SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006) (information from other sources cannot establish the existence of a medically determinable impairment). Evidence from other sources such as social workers and therapists may be used to demonstrate the severity of a claimant's impairment and how it affects his or her ability to work. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Although opinions from "other sources" are not entitled to the presumption of deference applicable to opinions from treating, "acceptable medical sources,"

they must be considered because the adjudicator is required to evaluate all evidence that comes before it. The factors required for analysis of a treating physician's opinion can also be applied to opinion evidence from other sources. SSR 06-03p, 2006 WL 2329939, at *4.

Here, the ALJ assigned "little weight" to Social Worker Thomas's February 6, 2015, medical source statement wherein she opined that Plaintiff would be unable to obtain and retain work in a competitive work setting. The ALJ correctly noted that Social Worker Thomas is not an acceptable medical source and stated that, nonetheless, her opinion was "given consideration pursuant to SSR 06-3p." (T.14). Although the ALJ recognized that Social Worker Thomas "is a treating source with first-hand knowledge of [Plaintiff]'s impairments and functional limitations[,]" the ALJ determined that her opinion was "significantly inconsistent with [Plaintiff]'s treatment records, her own report, and [Plaintiff]'s statements regarding her mental functioning." (T.14-15). In particular, the ALJ observed, Social Worker Thomas "notes that she is unable to assess [Plaintiff]'s functional abilities in most areas[,]" which "discredits her conclusory statement of [Plaintiff]'s inability to work." (T.15). To the contrary, the ALJ noted, Social Worker Thomas mentioned in her report that Plaintiff "retains significant abilities in the areas of maintaining an acceptable personal appearance, behaving in a socially appropriate

and stable manner, behaving predictable in social situations, and demonstrating reliability." (T.14-15 (citation omitted)). Furthermore, the ALJ noted, Plaintiff "herself has stated that she has no problems with paying attention, following instructions, and finishing tasks[.]" (T.15 (citation omitted)). As the ALJ noted, Social Worker Thomas's conclusion that Plaintiff's limitations from her mental impairments rendered her unable "to obtain and retain work in a competitive work setting" for at least six months was "significantly inconsistent with [Plaintiff's] treatment records, her own report, and [Plaintiff's] statements regarding her mental functioning. (T.14). "Generally, the more consistent an opinion is with the record as a whole, the more weight [the SSA] will give to that opinion." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). The ALJ's decision reflects consideration of the proper factors enumerated in SSR 06-03p and the applicable regulations, and his analysis is supported by substantial evidence in the record. Therefore, the Court finds that the ALJ's weighing of Social Worker Thomas's opinion was not erroneous.

**B.   Step Two Error**

Plaintiff maintains that the ALJ erred at step two by finding that her mental impairment (adjustment disorder with depressed mood) was not a severe impairment (T.14), notwithstanding consultative psychologist Dr. Yu Ying Lin's diagnosis of this condition (T.411). (See Pl.'s Br. at 12-13). Here, at step two, the

ALJ recognized that Plaintiff had the "medically determinable mental impairments of adjustment disorder with depressed mood, depression, and anxiety," but found that, "considered singly and in combination, [they] do not cause more than minimal limitation in [Plaintiff]'s ability to perform basic mental work activities and are therefore non-severe." As discussed further below, the ALJ's step-two severity determination was not legally erroneous and is supported by substantial evidence.

Step two of the sequential evaluation process requires a determination as to "whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities." Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (citing 20 C.F.R. §§ 404.1521(a), 416.921(a)). "Thus, a diagnosis alone is insufficient to establish a severe impairment. . . ." Petell v. Comm'r of Soc. Sec., No. 7:12-CV-1596LEK/CFH, 2014 WL 1123477, at *4 (N.D.N.Y. Mar. 21, 2014). The ability to do basic work activities is defined as "the abilities and activities necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b)). Basic work activities which are relevant for evaluating the severity of a mental impairment include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b); see

<u>also</u> Social Security Ruling ("SSR") 85–28, 1985 WL 56856, at *3–4 (S.S.A. 1985).

Relevant to the step two finding are the results of the ALJ's application of the special technique,[4] pursuant to which the ALJ determined that Plaintiff had no limitations in performing activities of daily living; had no greater than "mild" limitations in social functioning and maintaining concentration, persistence, or pace; and had never experienced an extended episode of decompensation. (T.15). Plaintiff does not challenge the correctness of the ALJ's application of the special technique. The evidence cited by the ALJ in connection with the special technique supports the ALJ's finding that Plaintiff's mental impairments cause no more than minimal limitations in her ability to perform work-related functions.

For instance, in her Adult Function Report, Plaintiff stated that she was able to go out alone by herself, could socialize with others, had no difficulties in getting along with authority figures, had never lost a job due to problems in getting along with people, had no problems in paying attention, can finish tasks she starts, and can follow both spoken and written instructions. On

---

[4] When a claimant alleges mental impairments, the ALJ also must follow the "special technique" set out in 20 C.F.R. §§ 404.1520a and 416.920a. The special technique requires the ALJ to consider a claimant's functional abilities, as affected by her mental impairments, in four domains: (1) activities of daily living; (2) social functioning; (3) maintaining concentration, persistence, or pace; and (4) whether the claimant has experienced extended episodes of decompensation. <u>See</u> 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

examination, Dr. Lin, the consultative psychological examiner, found that Plaintiff's attention  and concentration were intact. Dr. Lin opined that Plaintiff could relate adequately with others, could follow and understand simple instructions, could maintain attention and concentration, and could maintain a regular schedule. Thus, notwithstanding the diagnosis of adjustment disorder with depressed mood, Dr. Lin's clinical observations and opinion reflect that Plaintiff's abilities to perform basic work activities were only minimally affected, if at all, by her mental impairments.

### C.    Duty to Develop the Record

Plaintiff also argues that the ALJ erred by failing to fulfill his regulatory duty to develop the record insofar as he did not re-contact the treating physicians and other sources whose opinions he declined to accord controlling weight. (See Pl.'s Br. at 16-18). Plaintiff contends that because the ALJ did not properly credit the opinions on medical disability of Dr. Zeidman, Dr. Ng, and Social Worker Thomas, the ALJ was "under an absolute obligation to recontact said physicians to seek clarification[,]" pursuant to 20 C.F.R. § 404.1512(e). (Id. at 17). The Commissioner argues that the record was complete and did not require further development.

As discussed supra in this Decision and Order, "the record was sufficient to support the ALJ's decision not to give controlling weight to [the treating source]'s opinion[s]. . . ." Carvey v. Astrue, 380 F. App'x 50, 53 (2d Cir. 2010) (unpublished opn.).

Further, "because the record evidence was adequate to permit the ALJ to make a disability determination," the Court finds "no merit in [Plaintiff]'s claim that the ALJ was obligated <u>sua</u> <u>sponte</u> to recontact the treating physicians [and social worker][.]" <u>Id.</u> (citing <u>Perez v. Chater</u>, 77 F.3d 41, 48 (2d Cir. 1996) (finding no error where ALJ did not re-contact treating physician where "[t]he ALJ had before him a complete medical history, and the evidence received from the treating physicians was adequate for him to make a determination as to disability"); 20 C.F.R. § 404.1512(e). Accordingly, the Court finds that the ALJ did not run afoul of the regulations or the relevant case law by not recontacting Dr. Zeidman, Dr. Ng, and Social Worker Thomas.

In support of this argument, Plaintiff relies on <u>Greek v. Colvin</u>, 802 F.3d 370 (2d Cir. 2015) (<u>per</u> <u>curiam</u>). According to Plaintiff, <u>Greek</u> presented "nearly identical medical findings," and that the ALJ in this case "made the same ruling" that the Second Circuit in <u>Greek</u> found to be harmful error requiring remand. (<u>See</u> Pl.'s Br. at 17-18). Plaintiff is incorrect. In <u>Greek</u>, both parties agreed that the ALJ's explanation for rejecting the treating physician's opinion "was factually flawed" because the physician "did not actually determine that Greek was unable to perform any postural activity" but instead "appear[ed] to have simply indicated that Greek's ability to perform certain postural activities was not relevant to her conclusion because that conclusion rested on a

different set of [medical] problems that made it hard for Greek to work[.]" Greek, 802 F.3d at 376. The Second Circuit held that "[b]ecause the ALJ rested his rejection of [the treating physician]'s opinion on flawed reasoning and failed to provide any other reasons for rejecting the opinion, the ALJ erred." Id. The district court mistakenly concluded that this error was harmless, and the Second Circuit therefore remanded the case for further administrative proceedings. Id.

Greek is wholly inapposite to Plaintiff's argument, which actually appears to assert an error by the ALJ in failing to acknowledge VE testimony in response to a purported hypothetical; it does not assert a factual error by the ALJ in rejecting the treating source opinions. Plaintiff states that at the hearing, the ALJ asked the VE, "If I were to hang my hat on the [consultative examinations]'s that are moderately limited in appropriately dealing with stress. If I went to a low stress environment . . . would be less than the ability to do an eight hour day?" According to Plaintiff, the VE responded, "Yes," to this question.

However, Plaintiff has significantly misquoted the hearing transcript in making this argument. Indeed, the ALJ *did not ask* the question that Plaintiff contends he asked:

> [The ALJ]      Okay. If I were to hang my hat on the
>                CE's that are moderately limited in
>                appropriately dealing with stress. If I
>                went to a low stress work environment, I
>                think you're looking at unskilled work in
>                a good situation. And other hypotheticals

on the physical end would be less than the ability to do an eight hour day. *So has your testimony been consistent with the Dictionary of Occupational Titles and Selected Characteristics of Occupations?*

[The VE] *Yes.*

(T.53). The excerpt above makes clear that contrary to Plaintiff's assertion, the VE's response, "Yes," was not in reply to a question about limitations on dealing with stress. The ALJ simply was "thinking out loud" rather than posing a hypothetical to the VE. It is only by misrepresenting the context in which this testimony was provided that Plaintiff can assert that the VE confirmed the ALJ's decision to include a limitation on Plaintiff's ability to deal with stress as part of the RFC, even though the ALJ clearly did not do so—either at the hearing or in his decision.

In short, Plaintiff's argument relies on a misunderstanding of the <u>Greek</u> case as well as a mischaracterization of the record. The Court rejects it for both of these reasons.

### D.   Erroneous Credibility Assessment

Plaintiff challenges the ALJ's credibility assessment on several grounds. (<u>See</u> Pl.'s Br. at 19-21).

First, Plaintiff states that the ALJ "improperly determined that [she] was not disabled solely based upon his observation at the hearing." (Pl.'s Br. at 19). However, this assertion finds no support in the ALJ's decision, the transcript, or the remainder of the record.

-17-

Second, Plaintiff cites <u>Rosario v. Colvin</u>, 13-CV-6623 CJS, 2017 WL 655268 (W.D.N.Y. Feb. 17, 2017), and asserts that remand is required because the ALJ used language that the district court found erroneous in <u>Rosario</u>. <u>See id.</u> at *5 ("The ALJ used an oft-criticized phrase, that [the claimant]'s 'statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.' This boilerplate language 'implies that ability to work is determined first and is then used to determine the claimant's credibility.'") (quoting <u>Bjornson v. Astrue</u>, 671 F.3d 640, 645 (7th Cir. 2012); citation to record omitted).[5] However, the ALJ here did not use that language but instead stated that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" "[her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (T.17). Therefore, the ALJ did not employ the "oft-criticized" language used by the adjudicator in <u>Rosario</u>.

Third, Plaintiff asserts that the ALJ erroneously failed to consider her efforts to obtain treatment and her good work record. (<u>See</u> Pl.'s Br. at 20 (citing Titles II & XVI: Evaluation of

---

[5] Plaintiff neglects to mention that the district court in <u>Rosario</u> found that the error was harmless. 2017 WL 655268, at *5-*6.

Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7P, 1996 WL 374186 (S.S.A. July 2, 1996)). While "a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations[,]" SSR 96-7p, 1996 WL 374186, at *7, that is but one factor to be considered in assessing credibility. See id. at *3, et seq. (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). Likewise, a claimant's good work history is "'just one of many factors' appropriately considered in assessing credibility." Wavercak v. Astrue, 420 F. App'x 91, 94 (2d Cir. 2011) (quoting Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998)). As the Second Circuit has explained, "[e]ven where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted). The relevant question is not whether there is substantial evidence supporting Plaintiff's view, but whether substantial evidence supports the ALJ's decision. T.B. ex rel. Bonet v. Colvin, 523 F. App'x 59, 59 (2d Cir. 2013) (unpublished opn.).

Here, the ALJ noted that Plaintiff's daily activities failed to indicate any disabling limitations. (T.15, 17). See 20 C.F.R.

§§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (ALJ must consider claimant's "daily activities" when evaluating symptoms). In her Adult Function Report, Plaintiff acknowledged that she could care for her minor son, prepare meals, perform some household chores, drive a car, and shop in stores. (T.15, 244-47). At the hearing, Plaintiff testified that she could walk for about 30 minutes at a time, sit for 30 to 45 minutes at a time, and stand in one place for up to an hour at a time. (T.17, 40-44). See, e.g., Poupore v. Astrue, 566 F.3d 303, 307 (2d Cir. 2009) (ALJ properly found that claimant was not fully credible where evidence showed claimant was "able to care for his one-year-old child, including changing diapers, that he sometimes vacuumed and washed dishes, that he occasionally drove, and that he watched television, read, and used the computer").

The "very deferential" "substantial evidence" standard has been met in this case. See Brault v. Soc. Sec. Admin., 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (The "substantial evidence" standard allows a court to reject the ALJ's findings "'only if a reasonable factfinder would have to conclude otherwise.'") (quotation omitted). Therefore, the Court may not reject the ALJ's credibility assessment.

**E.  Erroneous  Application  of  the  Medical-Vocational Guidelines ("the Grids")**

Plaintiff contends that the ALJ erred by evaluating her case under Rules 201.15 and 201.22 of the Grids. (See Pl.'s Br. at 21-23).

"Although the grid results are generally dispositive, exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations." Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999) "In particular, 'sole reliance on the [g]rid [s] may be precluded where the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform.'" Id. (quoting Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y. 1996) (in turn citing 20 C.F.R. Part 404, Subpart P, App. 2, §§ 200.00(e)(2), 201.00(h)); brackets in original). "In these circumstances, the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.'" Rosa, 168 F.3d at 78 (quoting Bapp v. Bowen, 802 F.2d 225, 231 (2d Cir. 1980)).

Here, the ALJ determined that Plaintiff did *not* have the RFC to perform a full range of sedentary work. (See T.19 (noting that "the claimant's additional limitations do not allow the claimant to perform the full range of sedentary work. . .")). Therefore, sole reliance on the Grids would have been improper, but, as the ALJ

properly observed, "[w]hen the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of 'disabled' without considering the additional exertional and/or non-exertional limitations." (T.19 (citing SSR 83-12; SSR 83-14)). See, e.g., McDonaugh v. Astrue, 672 F. Supp. 2d 542, 549 (S.D.N.Y. 2009) ("The use of the grid in [the claimant]'s situation does not require a remand, because the ALJ's decision that jobs existed for [the claimant] is supported by substantial record evidence and is not based primarily on the grid. Additionally, the ALJ was permitted to use the grid as a non-exclusive framework for decision-making.") (internal citation omitted; citing 20 C.F.R, Pt. 404, Subpt. P, App. 2 § 200.00(e)(2)(2009); Bapp, 802 F.2d at 605).

Here, the ALJ did not utilize the Grids as an exclusive framework for his decision. Instead, the ALJ properly obtained the testimony of a vocational expert and, as required, "evaluated [her case] on an individualized basis. . . ." Nelson v. Bowen, 882 F.2d 45, 49 (2d Cir. 1989) (citing McAndrew v. Heckler, 562 F. Supp. 1227, 1230-31 (S.D.N.Y. 1983) (individualized evaluation rather than the Grids must be used where substantial evidence did not support ALJ's findings that claimant has RFC to perform sedentary work and that his psychiatric limitations would not significantly

affect his RFC); other citation omitted). The ALJ proceeded to find that in the course of her past relevant work, Plaintiff acquired transferable skills that would transfer to new, sedentary positions that would accommodate her non-exertional limitations. (T.16, 19-20). At the hearing, the ALJ asked the VE whether any occupations exist which could be performed by an individual with the same age, education,[6] past relevant work experience, and RFC as Plaintiff, and which require skills acquired in her past relevant work but no additional skills. The VE testified that representative occupations such an individual could perform include  Sorter (Dictionary of Occupational Titles ("DOT") code no. 209.687-022) sedentary, semiskilled (SVP 3), with approximately 77,078 jobs nationally; and Information Clerk (DOT code no. 237.367-022) sedentary, semiskilled (SVP 4), with approximately 1,300,000 jobs nationally. (See T.19, 50-51). In addition, the VE testified, Plaintiff's acquired skills (data skills and people skills) would readily transfer to these representative positions, and no new skills would need to be acquired in order to perform them.

The VE's testimony in response to the question about the hypothetical individual (whose RFC and vocational profile had

---

[6]
    Plaintiff and was 49 years-old, which is defined as a "younger individual age 45-49," on the alleged disability onset date; she subsequently changed age category to "closely approaching advanced age." As far as her education, Plaintiff has at least a high school education and is able to communicate in English.

adequate record support) constituted substantial evidence for the ALJ's step five finding. See Dumas v. Schweiker, 712 F.2d 1545, 1553–54 (2d Cir. 1983) (holding that an ALJ is entitled to rely on vocational expert's testimony of a hypothetical that is based on assumptions that are supported by evidence in the record).

## V. Conclusion

For the foregoing reasons, the Court finds that the Commissioner's decision is free of legal error and is supported by substantial evidence. Therefore, it is affirmed. Plaintiff's motion for judgment on the pleadings is denied and the Commissioner's motion for judgment on the pleadings is granted. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated:    May 24, 2018
          Rochester, New York.